UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MAX LLAQUE,

                         Plaintiff,                      07 Civ. 6943 (CLB)

      -against-


CSC HOLDINGS, INC.,

                        Defendant.

-------------------------------------------------------x


### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS COMPLAINT


#### Preliminary Statement

This memorandum of law is submitted in opposition to Defendant's pre-answer motion, made pursuant to FRCP 12(b)(6), to dismiss the complaint as legally insufficient.


#### Controlling Principles of Law

The standards governing a Rule 12(b)(6) motion are well-settled. Sheppard v. Beerman, 18 F.3d 147, 150 (2nd Cir. 1994), *cert. denied*, 115 S.Ct. 73 (1994), *citing* Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2nd Cir. 1987).

The Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." Patel v. Contemporary Classics of Beverly

1

Hills, 259 F.3d 123, 126 (2ⁿᵈ Cir. 2001), *citing* Irish Lesbian & Gay Org., 143 F.3d at

644; Freedman v. Freedman, 116 F.Supp.2d 379, 380 (E.D.N.Y. 2000). The Court

cannot dismiss the Complaint unless "it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitled him to relief." Sheppard, 18.

F.3d at 150 (citations omitted).

"[T]he issue is not whether a plaintiff is likely to prevail ultimately, but whether

the claimant is entitled to offer evidence to support the claims. Indeed it may appear on

the face of the pleading alone that a recovery is very remote and unlikely but that is not

the test." Schlesinger v. New York City Transit Authority, 2001 WL 62868, *1 (S.D.N.Y.

2001), *citing* Chance v. Armstrong, 143 F.3d 698, 701 (2ⁿᵈ Cir. 1998) "(quotation marks

omitted); *see also* Cooper v. Parsky, 140 F.3d 433, 440 (2ⁿᵈ Cir. 1998) ('The task of the

court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support

thereof.') (quotation marks omitted)."

Against these well-established standards and when assessing the factual

allegations plead in the Complaint in the light most favorable to the Plaintiff, the

Defendant's motion must be denied.


## The Presently Incontrovertible Facts Alleged in the Complaint

On May 23, 2007, while out of state Plaintiff attempted to use a debit card with

respect to an account he has with USAlliance Federal Credit Union (hereinafter

"USAlliance"). The card was "declined" for reasons then presently unknown to Plaintiff

(Complaint, para. 4).

The following day Plaintiff was orally advised by USAalliance that on or about May 23, 2007, it had received an information subpoena and restraining notice concerning a judgment in the United States District Court for the Southern District of New York "recovered by CSC HOLDINGS, INC against MAX LLAQUE on 7/22/2000 and entered in said court for the sum of $687,003.00 together with interest thereon from 7/22/2000" (*id.* at 5).

Since Plaintiff had no previous awareness of and/or notice that any litigation by CSC Holdings, Inc. had ever been commenced with respect to him and that any such judgment had been entered, he immediately requested that USAlliance provide him with copies of the subpoena and restraining notice. The requested copies were received by Plaintiff on May 25, 2007 (*id.* at 6).

Five days thereafter Plaintiff retained counsel who contacted the attorney of record for the CSC Holdings, Inc. and requested a copy of both the default judgment and the affidavit(s) of service regarding the summons and complaint in the underlying action, CSC Holdings Inc. v. Max Llaque, 00 Civ. 3843 (CLB). *Id.* at 7.

In early June of 2007 the judgment creditor's counsel provided to Plaintiff's counsel a copy of the default judgment - - but not the affidavit(s) of service as requested. A second request for the affidavits of service was immediately made, and ignored by the judgment creditor's counsel (*id.* at 8).

At no time was Plaintiff served with either the summons or complaint in the underlying action, a circumstance that prevented him from appearing and defending (*id.* at 9).

3

At no time was Plaintiff ever apprised, prior to May 24, 2007, that any such litigation had ever been instituted with respect to him, a circumstance that prevented him from earlier moving to be relieved of the default judgment pursuant to FRCP 60 (*id.* at 10).

With respect to the underlying action Plaintiff has two good and meritorious defenses: lack of personal jurisdiction and time-bar (*id.* at 11).

Plaintiff is free of fault and negligence, neither having done and/or refrained from doing anything whatsoever as a result of which the subject judgment was entered without his knowledge (*id.* at 12).

## POINT

## PLAINTIFF PROPERLY COMMENCED
## THIS INDEPENDENT ACTION

It is well-settled that an independent action to set aside a judgment may be brought under FRCP 60(b)(6) to "prevent a grave miscarriage of justice" [United States v. Beggerly, 524 U.S. 38 (S.Ct., 1998)], provided that: i) it is made within a "reasonable time" after the Plaintiff learns about the existence of the judgment [Lehman Brothers, Inc. v. Masselli, 1998 WL 531831 (S.D.N.Y, 1998)]; the Plaintiff has "no other available or adequate remedy; the entry of the at-issue judgment with respect to which Plaintiff seeks equitable relief did not result from Plaintiff's "own fault, neglect or carelessness"; and that established grounds for equitable relief (*e.g.* fraud, accident or mistake) are established. Campaniello Imports, Ltd. V. Saporiti Italia S.p.A, 117 F.3d 655, 662 (2d Cir. 1997.

Each of these elements are present in the case at bar and for that reason the motion to dismiss must be denied.

On May 23, 2007, Plaintiff was first alerted to the circumstance that moneys which should have been available to him had been subjected to a restraining notice in CSE Holdings, Inc. v. Max LLaque, 00 Civ. 3843 (CLB)(Complaint, paras. 5-6).[1] At no time had Plaintiff ever been served with either the summons or complaint in that action a circumstance that prevented him from appearing and defending (Complaint, para. 9).

On May 25, 2007, at Plaintiff's request he was first provided with a copy of the restraining notice (Complaint at 6). Five days later he retained counsel who in turn requested of counsel to CSE Holdings, Inc. copies of the default judgment that had been entered against Plaintiff and the affidavits of service regarding the summons and complaint in the underlying action (Complaint at 7).

In early June of 2007 the judgment creditor's counsel provided to Plaintiff's counsel a copy of the default judgment, only. The affidavits of service were not provided (Complaint at 8). A second request for the affidavits of service was immediately made and ignored by CSE Holdings, Inc.'s counsel (Complaint at 8).

Additionally on the basis of the complaint it is self-evident that Plaintiff is free of fault and/or negligence, having done and/or refrained from doing anything whatsoever as a result of which the subject default judgment was entered in the principal sum of $687,003 without his knowledge.

Against this background the independent action was properly filed.

_____

[1] As a consequence Plaintiff was, for lack of awareness, unable to timely move pursuant to any other subdivision of FRCP 60 to set aside the default judgment at issue in this case (Complaint at 10). He thus has no remedy at law available to him. In that connection he as two meritorious defenses - - lack of personal jurisdiction and time-bar (Complaint at 11).

Brief consideration of movant's various arguments is warranted.

In the portion of its memorandum of law denominated "Procedural History and Relevant Facts" it is recited, without benefit of a citation to anything:

> "The Prior Action was premised upon numerous invoice records showing that Max Llaque purchased **more than fifty** 'pirate' decoding devices from Ultimate Mail Order Services. . .a known distributor of priate decoding devices (a copy of the relevant invoice records are attached as Exhibit B). Cablevision had received the UMOS invoice records in early 1999. the devices purchased by Llaque were compatible with Cablevision's cable system.
>
> Prior to commenced of the Prior Action, on November 16, 1999, Cablevision sent a pre-litigation demand letter. That letter was received and signed for by Llaque on November 19, 1999 (a copy of the letter and proof of receipt is attached hereto as Exhibit C). . . .On June 20, 2000, Cablevision caused Llaque to be served by serving a person of suitable age and discretion at his residence (a copy of the Affidavit of Service is attached hereto as Exhibit D)."

In a footnote to that purported recital of facts movant asserts, also without citation to anything: "Through the invoice records of 134 Mamaroneck Avenue, Mamaroneck, New York, Cablevision confirmed, prior to suit, that this was the location of a local video store that closed prior to April 2000. Cablevision also confirmed that **a** person by the name of

Max Llaque resided at 891 Mamaroneck Avenue, Mamaroneck, New York. It was this address where Cablevision served Llaque".

Under settled caselaw, cited *supra*, these unsupported allegations of "fact", which have no basis in the complaint, are patently improper and should be disregarded by the Court.

Assuming *arguendo* that the documents appended to Defendant's motion papers were to be considered by the Court, their substantive content hardly advances movant's contention.

Although Defendant claims that it sent to the Plaintiff in this action a pre-litigation letter: i) the Plaintiff never received any such correspondence; ii) he first saw that correspondence on September 21, 2007, when he reviewed Defendant's motion papers; iii) he did not reside at the address (891 Mamaroneck Avenue) indicated in the correspondence; iv) he never signed a receipt for any such letter; and v) the handwritten signature on the receipt does not bear Plaintiff's signature (Llaque Affidavit, para. 2).

With respect to movant's claim that on June 20, 2000, it served a person of suitable age and discretion at Plaintiff residence, the address indicated for the service of process is not where Plaintiff resided. Moreover while the affidavit of service indicates that the process server served "Maria Llaque sister", who at the time was approximately thirty years of age, one hundred forty-five pounds, "White" with "Blond" hair, in fact:

- Plaintiff has two sisters, neither one of whom resided at 891 Mamaroneck Avenue,

- Neither sister is White,

- Both sisters are dark skinned,

7

- Neither sister is blond - - both having dark hair,

- Neither sister at the time was thirty and/or approximately thirty
  years of age, and,

- Neither weighed anything approximating one hundred forty-five
  pounds.

Llaque Affidavit, at para. 3.

To the extent that movant's baldly recite (Memorandum at 4): "since Plaintiff was undeniably made aware of Cablevision's claims against him", that recital is flat out false and - - just as the filing of false affidavits of service as a predicate to unlawfully obtain a default judgment - - is manifestly intended to deceive the Court (Llaque Affidavit paras. 4-5.

Conclusion

The motion to dismiss should in all respects be denied.

Dated: White Plains, N.Y.
       October 8, 2007

                              LOVETT & GOULD, LLP
                              By:
                              Jonathan Lovett (4854)
                              222 Bloomingdale Road
                              White Plains, N.Y. 10605
                              914-428-8401