UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MAX LLAQUE,

        Plaintiff,                       07 CV 6943 (CLB)(LMS)

-against-

CSC HOLDINGS, INC.,

        Defendant.
-------------------------------------------------------X

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF CSC HOLDINGS, INC.'s **MOTION TO DISMISS**

LEFKOWITZ, HOGAN & CASSELL, LLP
Attorneys for Defendant
Michael D. Cassell (MC 0236)
350 Jericho Turnpike, Suite 100
Jericho, New York 11753
(516) 942-4700

## I. INTRODUCTION

This Memorandum of Law is submitted by defendant, CSC Holdings, Inc. ("Cablevision" or "Defendant"), in further support of its motion seeking dismissal of the Complaint filed by plaintiff, Max Llaque ("Llaque" or "Plaintiff"), pursuant to Fed. R. Civ. P. 12(b)(6).

In its moving papers, Cablevision requested that this action be dismissed because Llaque could not demonstrate that allowing the judgment to stand would result in a "grave miscarriage of justice" and he could not demonstrate that he had no other adequate remedy available.

In his opposition, Llaque asserts that it would be a grave miscarriage of justice to allow the judgment against him to stand because he was not properly served in this matter and Cablevision never advised him of its claims against him. Llaque also asserts that he has no other adequate remedy available since he allegedly cannot timely move to set aside the judgment pursuant to Fed. R. Civ. P. 60(b).

Most importantly, even assuming that Llaque's assertions that he was not properly served in this matter and was never advised of Cablevision claims against him are true (which Cablevision disputes) this would still not be sufficient to satisfy the stringent standard for demonstrating a "grave miscarriage of justice." Moreover, Llaque's assertion that he cannot move for relief under Fed. R. Civ. P. 60(b) is clearly based upon a misreading of that Rule. Accordingly, as discussed below, Llaque's opposition should be rejected and this action should be dismissed.

## II. PROCEDURAL HISTORY AND RELEVANT FACTS

As set forth in the Memorandum of Law in Support of CSC Holdings, Inc.'s Motion to Dismiss ("Cablevision Mem."), the only claim for relief in this action is that the Court vacate the default judgment entered in the action entitled <u>CSC Holdings, Inc. v. Max Llaque</u>, 00 Civ. 3843 (CLB) (the "Prior Action"). The Prior Action was premised, in part, upon twenty-four (24) invoice

records that showed that Max Llaque, between August 1994 and June 1996, purchased **more than fifty** "pirate" decoding devices from Ultimate Mail Order Services ("UMOS"). See Cablevision Mem. Exhibit B. Prior to commencement of the Prior Action, on November 16, 1999, Cablevision sent a pre-litigation demand letter to Max Llaque. That letter was received and signed for by a Max Llaque on November 19, 1999. See Cablevision Mem. Exhibit C.

After commencing the Prior Action, in accordance with Fed. R. Civ. P. 4, Cablevision caused Llaque to be served with the summons and complaint by serving a person of suitable age and discretion at his residence, 891 Mamaroneck Avenue, Mamaroneck, New York. Llaque did not respond to the complaint and on September 22, 2000, the Court entered judgment against him in the amount of $687,003. See Cablevision Mem. at 1-2.

In Plaintiff's Memorandum of Law in Opposition to Defendant's 12(b)(6) Motion to Dismiss Complaint ("Llaque Mem.") and Llaque's accompanying Affidavit in Opposition to Motion to Dismiss ("Llaque Aff."), Llaque asserts that: 1) he never received or signed for the November 16, 1999 letter; 2) he did not reside at 891 Mamaroneck Avenue; and 3) neither of his sisters match the description of the person identified in the Affidavit of Service. See Llaque Aff. ¶¶ 2-3. Llaque then argues that this action should not be dismissed since the judgment was entered against him "falsely" and because he has no other adequate remedy at law. See Llaque Mem. at n.1, 8.

Simply put, Llaque's opposition is long on accusations and short on explanations. For example, conspicuously absent from Llaque's opposition is any denial that he was the one who purchased and sold/distributed the more than fifty pirate decoding devices. Llaque also does not provide any documentation whatsoever to support his assertion that he did not reside at 891 Mamaroneck Avenue during the relevant time period. Likewise, he does not provide any explanation as to why, if he truly did not live at 891 Mamaroneck Avenue in November 1999, someone would

sign for a letter sent to Max Llaque at that address. Finally, though Llaque denies that his "sisters" meet the description of the person listed in the Affidavit of Service, his opposition does not counter the reality that there may be another person connected to the address who meets the description set forth in the Affidavit of Service. Thus, as discussed in more detail below, the arguments raised in Llaque's opposition should be rejected.

### III. ARGUMENT

#### A. LLAQUE HAS FAILED TO DEMONSTRATE A GRAVE MISCARRIAGE OF JUSTICE

An independent action seeking to vacate a prior judgment is only viable if there are "extraordinary circumstances" and the action is needed to "prevent a grave miscarriage of justice." Courts interpreting this standard have generally found that the party seeking to maintain the independent action must show that the other party engaged in egregious conduct such as committing a fraud upon the Court. See Cablevision Mem. at 2-3.

Llaque vainly attempts to satisfy this standard by arguing that Cablevision committed a "fraud" by filing a "false" Affidavit of Service and by "falsely" asserting that he was aware of the Prior Action. See generally Llaque Aff. ¶¶ 4, 5. Not only are his allegations unpersuasive since they are entirely based upon Llaque's own opinion, but such allegations do support Llaque's assertions that this action is proper. This is because it is well-settled that merely asserting that the other party committed a "fraud" is not sufficient to maintain an independent action. Indeed, even a showing that a party fabricated evidence or committed perjury will not suffice. Rather, there must be a showing that the fraud "'subvert[s] the integrity of the court itself, or is . . . perpetrated by officers of the court.'" Miller v. Shelton, No. 99-CV-6142, 2006 U.S. Dist. LEXIS 23441, at *13 (W.D.N.Y. March 20, 2006) (citation omitted) (a copy of this decision is attached to the Cablevision Mem. as

3

Exhibit G); see also Campaniello Imports Ltd. v. Saporiti Italia S.P.A., 117 F.3d 655, 663 (2d Cir. 1997) (explaining that the fraud required to maintain an independent action is even "more stringent" than the fraud required under Fed. R. Civ. P. 60(b)(3)).

Even assuming that Llaque's assertions are true, which they are not, the "fraud" alleged by him is clearly not sufficient to demonstrate that Cablevision committed conduct that subverted the integrity of the court or used the officers of the court to perpetrate a fraud upon Llaque. Accordingly, Llaque cannot maintain an independent action and thus, this action should be dismissed.

Moreover, an analysis of Llaque's assertions as to how Cablevision's actions were allegedly improper demonstrates that, for numerous reasons, Llaque himself is clearly being less than forthright with the Court.

For example, though Llaque is obviously aware that the judgment that Cablevision obtained against him in the Prior Action is premised upon his sale, distribution and/or use of the **more than fifty** "pirate" decoding devices that Llaque purchased from UMOS, Llaque's opposition is completely silent regarding the pirate decoding devices. Llaque never denies that he purchased the devices nor does he deny that he sold or distributed the devices as alleged by Cablevision. Llaque's silence on this issue is most telling.

Second, though Llaque asserts that resided at an address other than 891 Mamaroneck Avenue in November 1999, Llaque Aff. ¶ 2c, Llaque does not deny that he has some connection with that address. Llaque's assertion is also dubious since he fails to identify the "other address" and he fails to attach any documentation to support this assertion. Further, even assuming that Llaque was at a different address at the time of service, this does not necessarily mean that service was improper since a person can have more than one "dwelling house" or "usual place of abode" for purposes of service under Fed. R. Civ. P. 4(e). See National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 257 (2d

4

Cir. 1991) ("There is nothing startling in the conclusion that a person can have two or more 'dwelling houses or usual places of abode,' provided each contains sufficient indicia of permanence."); Jaffe & Asher v. Van Brunt, 158 F.R.D. 278, 280 (S.D.N.Y. 1994) (finding that even though defendant was not staying at the location at which he was served, service at that location was still proper since there was "sufficient indicia of permanence at that location").

Third, though Llaque denies ever signing for the pre-litigation demand letter, Llaque Aff. ¶¶ 2 d-e, he provides no explanation whatsoever as to who did actually sign for this letter or why someone at 891 Mamaroneck Avenue would sign for a letter addressed to Max Llaque. See Cablevision Mem. Exhibit C.

Accordingly, Llaque's attempt to maintain an independent action to vacate the judgment against him should be denied and the Complaint dismissed.

### B. LLAQUE DOES NOT SATISFY THE ADDITIONAL REQUIREMENTS FOR MAINTAINING AN INDEPENDENT ACTION

In addition to having the burden of establishing that a grave miscarriage of justice would result if the judgment is not vacated, the plaintiff must satisfy other requirements, such as demonstrating that there is no other adequate remedy available, in order to sustain an independent action. When a plaintiff has the ability to attempt to vacate the judgment by filing a motion in the underlying action the plaintiff has an "other adequate remedy available." Thus, when a plaintiff can file a motion under Fed. R. Civ. P. 60(b) seeking vacatur of the underlying judgment, maintaining an independent action seeking vacatur of the underlying judgment is improper. See Cablevision Mem. at 4.

Plaintiff's only reference to this issue in his opposition is his assertion, buried in a footnote, that since he was not aware of the Prior Action he could not timely move to vacate the judgment under Fed. R. Civ. P. 60. Llaque Mem. n.1. Llaque's assertion, however, is clearly based upon a

5

misreading of Fed. R. Civ. P. 60. While the Rule has a one-year limitation for certain challenges to a judgment, such as mistake, new evidence or fraud pursuant to Fed. R. Civ. P. 60(b)(1-3), in the Complaint Llaque asserts that he is seeking to vacate the judgment pursuant to Fed. R. Civ. P. 60(b)(6). See Complaint ¶ 2 (attached to the Cablevision Mem. as Exhibit A). Motions under Fed. R. Civ. P. 60(b)(6) need not necessarily be commenced within one year of the entry of the judgment. Rather, such motions must be brought within a "reasonable time" of the entry of the judgment. See Fed. R. Civ. P. 60(b) ("The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."). Assuming that Llaque's assertion that he was not aware of the judgment is true (which Cablevision disputes) it would appear that instead of filing this action, Llaque could have made a motion to vacate the judgment in the Prior Action under Fed. R. Civ. P. 60(b)(6) within a "reasonable time." Thus, there was no need to commence this independent action. See, e.g., Strategic Research Inst., Inc. v. Fabozzi, 187 F.R.D. 507, 512 (S.D.N.Y. 1999) (in finding that "plaintiff has not shown that it has no other available or adequate remedy" the court noted that plaintiff could have filed a motion under Rule 60(b)(6)).

6

## IV. CONCLUSION

In light of the foregoing, Cablevision respectfully requests that this Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: Jericho, New York
      October 16, 2007

> Respectfully submitted,
>
> LEFKOWITZ, HOGAN & CASSELL, LLP
>
> By: *[signature]*
> Michael D. Cassell (MC 0236)
> 350 Jericho Turnpike, Suite 100
> Jericho, New York 11753
> (516) 942-4700

7